No. 23-3484

---

# United States Court of Appeals
# For the Ninth Circuit

---

**SPEKULATION ORPHAN RELIEF TRUST,**
*Plaintiff-Appellant,*

v.

**NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING,**
*Defendant-Appellee.*

---

On Appeal from the United States District Court for the District of Nevada
Before the Honorable Jennifer A. Dorsey, Case No. 2:23-cv-00014

---

**APPELLEE'S MOTION TO STRIKE APPELLANT'S OPENING BRIEF, TO SUMMARILY AFFIRM THE DISTRICT COURT'S ORDER, AND TO SANCTION APPELLANT AND ITS COUNSEL**

---

Ariel E. Stern, Esq.
Nevada Bar No. 8276
Natalie L. Winslow, Esq.
Nevada Bar No. 12125
Nicholas E. Belay, Esq.
Nevada Bar No. 15175
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134

*Attorneys for Defendant-Appellee NewRez LLC*
*d/b/a Shellpoint Mortgage Servicing*

**INTRODUCTION**

In the opening brief, Plaintiff-Appellant Spekulation Orphan Relief Trust ("Spekulation") and its counsel Joseph Hong have misled the Court about the dispositive facts and governing law at issue in this appeal. This was no accident. Defendant-Appellee NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") therefore moves to strike the opening brief, to summarily affirm the district court's ruling, and to sanction Spekulation and Mr. Hong.

Shellpoint recognizes all that is being asked of the Court, and does not take this step lightly. But the conduct at issue is so far outside the governing rules—of this Court, of professional conduct, and of basic fair play and candor—that Shellpoint is compelled to bring it to the Court's attention.

This appeal involves a single issue: Whether the district court had diversity jurisdiction. The district court held that it did, based on undisputed evidence that Spekulation changed its citizenship to match that of Shellpoint *after the suit was filed and in an effort to destroy diversity*. In arriving at that determination, the district court cited well-established Supreme Court and Ninth Circuit precedent holding that a post-filing change of citizenship does not divest a court of jurisdiction.

But the Court would not know this from Spekulation's opening brief. Spekulation and Mr. Hong do not mention the post-filing change in citizenship, do not mention that this change was the basis for the district court's decision, and do not

1

mention any of the controlling precedent cited in that decision.  Instead, Spekulation and Mr. Hong simply repeat the same argument they raised when moving to remand in the first place—that Shellpoint purportedly did not sufficiently establish diversity when removing the action.  Rather than confronting the dispositive facts and law that control the outcome of this appeal, Spekulation and Mr. Hong hide those facts from this Court by pretending they do not exist.

And this cannot be a simple mistake, as the district court's decision was entirely based on Spekulation's citizenship-changing tactics.  Indeed, at the hearing on the motion to remand, the district court stated:

> While we are here and because I have seen a handful of these types of cases now out of the Hong & Hong Law Office, I do want to note that it is obvious to this Court that what is happening here is some citizenship tampering-type gamesmanship.  There's no question that what's happening is, as soon as there's a risk that the case is going to get removed, the plaintiff's counsel goes looking for a way to switch the citizenship of the plaintiff.  It's—we've now seen a pattern of this.  So it's very clear to this Court what's happening here.

ECF No. 29 at 13.  Although Spekulation and Mr. Hong did not want this Court to know about their "gamesmanship" or that the district court called them out on it, there is no justification for their material omission that distorts the record.

The lack of candor by Spekulation and Mr. Hong merits condemnation and consequences.  To that end, the Court should strike the opening brief, summarily affirm the district court's ruling, and sanction Spekulation and Mr. Hong.

2

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

A detailed recitation of relevant facts and procedural background is set forth in Shellpoint's opposition to Spekulation's motion to remand in the district court. *See* ECF No. 19, attached as **Exhibit 1**. For the sake of efficiency, Shellpoint refers the Court to that document for a thorough account, but provides the following chronology of events leading up to Shellpoint's opposition to the motion to remand:

- On April 28, 2022, Spekulation sued Shellpoint and Quality Loan Servicing Corporation ("QLSC") in Nevada state court in an attempt to halt an impending deed-of-trust foreclosure sale and to quiet title in its favor. ECF No. 1-1 at 2.

- On November 15, 2022, Shellpoint moved to dismiss the action. *Id.* at 270. Shellpoint had not removed the lawsuit because, while Shellpoint was a citizen of Delaware, the complaint alleged that both Spekulation and QLSC were citizens of California. *Id.* at 3.

- On December 1, 2022, a company called Turcotto Inc. ("Turcotto") was formed as a Delaware corporation and became Spekulation's trustee. ECF No. 19, Ex. G; ECF No. 10. Spekulation employed this tactic to become a citizen of Delaware, which is Shellpoint's state of citizenship. ECF No. 19. Shellpoint was unaware of any of this at the time. *Id.*

- Five days later, on December 6, 2022, Spekulation filed an amended complaint, asserting nearly identical substantive allegations as those in the original complaint. ECF No. 1-1 at 520-26. The amended complaint did not include QLSC as a defendant, leaving only Spekulation as the plaintiff and Shellpoint as the defendant. *Id.* The amended complaint also alleged that Spekulation was a "Nevada trust," without mentioning its citizenship or the formation of Turcotto. *Id.*

3

- After Spekulation filed its amended complaint, Shellpoint's counsel sought to confirm Spekulation's citizenship to determine if there was diversity.  ECF No. 19 at 3-4.  After a cursory response from Mr. Hong stating that he believed one trustee of Spekulation to be a California resident and another trustee to be a Delaware corporation, Shellpoint's counsel was unable to obtain further information from Mr. Hong—including, for instance, the name of the Delaware corporation or the date it was formed—despite multiple follow-ups. *Id.*

- With the remaining parties being Spekulation (a "Nevada trust" and alleged citizen of California) and Shellpoint (a citizen of Delaware), Shellpoint removed the action to federal court on January 4, 2023. ECF No. 1.

- On January 31, 2023, Spekulation moved to remand.  ECF No. 10. For the first time, Spekulation identified Turcotto as its trustee and argued that Spekulation shared Shellpoint's Delaware citizenship. *Id.*  Spekulation's motion did not mention that Turcotto was formed seven months after the lawsuit was brought or that its formation was for the purpose of destroying diversity.  *Id.*

- On February 14, 2023, after researching Turcotto and its formation, Shellpoint opposed remand on the grounds that Spekulation created its Delaware citizenship after the action had already commenced. ECF No. 19 at 4.  Spekulation replied on February 21, 2023.  ECF No. 20.

When deciding Spekulation's motion to remand, the district court took notice of the facts set forth above, and at a March 6, 2023 hearing denied the motion from the bench.  ECF No. 29, attached as **Exhibit 2**.  The court's decision focused on "Spekulation's invention of a diversity-destroying trustee after filing the original complaint."  *Id.* at 10-11.  In so doing, the court determined that the relevant time for determining a party's citizenship for purposes of diversity jurisdiction is the time

4

of filing the original complaint, and that diversity existed between Spekulation and Shellpoint when the lawsuit was filed. *Id.* at 9-14 (discussing cases).

After further motions practice, the district court granted Shellpoint's motion for summary judgment. ECF No. 62. On October 11, 2023, the district court entered that judgment, thereby triggering the deadline to appeal. ECF No. 63.

This Court then set February 1, 2024, as the due date for Spekulation's opening brief, Dkt. No. 2, but Spekulation did not file its opening brief by the original deadline. Instead, it requested and received four extensions to file its opening brief. Each request was based on cursory and unsupported excuses for Spekulation's delay, ranging from illness to overseas travel to computer issues. On May 30, 2024, Spekulation finally filed its opening brief. Dkt. No. 20.[1]

## LEGAL STANDARDS

Ninth Circuit Rule 28(a)-1 authorizes this Court to strike briefs that do not comply with the Federal Rules of Appellate Procedure ("FRAP") or the Ninth Circuit Rules. Appellate courts also have inherent authority to strike briefs that are impertinent or irrelevant. *See Carrigan v. California State Legislature*, 263 F.2d 560, 564 (9th Cir. 1959). FRAP 28(a)(6) requires an appellant's opening brief to

---

[1]    After Spekulation's fourth request for a month-long extension, Shellpoint opposed the request and cross-moved to dismiss the appeal for failure to prosecute and for sanctions. *See* Dkt. No. 15. On June 7, 2024, after Spekulation had filed its opening brief, the Appellate Commissioner granted the fourth extension request and denied Shellpoint's cross-motion. Dkt. No. 23.

include a "statement of the case setting out the facts relevant to the issues submitted for review." And as courts have held, Rule 28 requires "a complete statement of relevant facts." *MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1218 (10th Cir. 2002); *see also El-Gharabi v. INS*, 796 F.2d 935, 936 n.1 (7th Cir. 1986).

The Ninth Circuit Rules allow this Court to summarily dispose of an appeal if the outcome is obvious. Specifically, Rule 3-6(a)(2) allows the Court to issue a dispositive order if "it is manifest that the questions on which the decision in the appeal or petition for review depends are so insubstantial as not to justify further proceedings." This Rule applies when a party's "argument is foreclosed by Ninth Circuit authority." *Deocampo v. Barr*, 766 F. App'x 555, 556 (9th Cir. 2019).

Federal appellate courts are authorized to impose sanctions on parties and/or their attorneys for their conduct in appeals. FRAP 46(c) states that a "court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." The "discipline" available to courts under this Rule includes the imposition of sanctions. *See, e.g.*, *DCD Programs, Ltd. v. Leighton*, 846 F.2d 526, 528 (9th Cir. 1988). Separately, 28 U.S.C. § 1927 authorizes courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." Finally, as the U.S. Supreme Court has held, federal courts have the "inherent power to impose sanctions for … bad-faith conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991).

## **ARGUMENT**

## I.    **Spekulation and Its Counsel Have Misled the Court**

Spekulation's opening brief grossly misrepresents the facts and law central to this appeal.  It leaves out key facts regarding Spekulation's change of citizenship, and it ignores controlling precedent that is directly on point.  These glaring omissions inevitably leave a misleading impression on the Court.

### A.    **Spekulation's "Statement of the Case and Facts" Omits Key Details that Form the Core of this Appeal**

As Spekulation itself characterizes it, this appeal involves "one issue"— whether the district court had diversity jurisdiction under 28 U.S.C. § 1332.  Dkt. No. 20 at 5.  Spekulation's sole argument is that because it and Shellpoint are now citizens of the same state, Shellpoint "failed to carry its burden to plead and establish complete diversity of citizenship between the parties in its removal petition."  *Id.* at 5; *see also id.* at 6-13.  But Spekulation fails to provide an accurate account of the facts and proceedings that led to the district court's conclusion that diversity existed.

Spekulation omits *the* key detail that decides the central issue in this appeal— namely, that its Delaware citizenship was created (and diversity thereby negated) *months after Spekulation filed the original complaint*.  This was thoroughly addressed in Shellpoint's opposition to the motion to remand, including that "Spekulation was not a citizen of Delaware at the time it initiated this action" and that Spekulation's new trustee, Turcotto, was formed seven months *after* the filing

7

of the original complaint.  *See* ECF No. 19 at 3-8; *see also id.*, Ex. F & G.  As Shellpoint explained, Spekulation "cannot change its citizenship in the midst of the case" for purposes of destroying diversity.  *Id.* at 2.

Spekulation's post-filing change of citizenship was no secondary theme or peripheral point in the district court.  Rather, it was *the central component of the district court's decision to deny remand*.  Indeed, the district court ruled that "Spekulation's invention of a diversity-destroying trustee after filing the original complaint doesn't change the jurisdictional analysis because the Court must look to the status of the existing parties when the case was filed."  ECF No. 29 at 10-11.  And the court concluded that "Spekulation's new Delaware citizenship does not defeat diversity jurisdiction."  *Id.* at 11.  Thus, Spekulation's change of citizenship was not some incidental or trivial detail; it was the decisive factor in the district court's ruling.

But nowhere in Spekulation's opening brief does it mention that its alleged Delaware citizenship was created *after* the filing of the original complaint.  *See generally* Dkt. No. 20.  Indeed, Spekulation's Statement of the Case and Facts merely states that Spekulation "maintains Delaware citizenship."  *Id.* at 3.  A reader—even a scrupulously careful reader—of the opening brief would have no idea that Spekulation changed its citizenship after the action commenced.  Spekulation sweeps its change of citizenship under the rug, hoping this Court will not notice it.

Spekulation also does not even attempt to explain how the district court's jurisdictional analysis was wrong.  Instead, Spekulation is silent as to the dispositive element of the court's decision, which was that Spekulation's Delaware citizenship was manufactured after the time of the original complaint.  Now, on appeal, Spekulation merely recycles the same argument it advanced in its motion to remand.  This lack of candor deprives the Court of a fair, representative, or even complete account of the district court proceedings and issues presented on appeal.

### B.     The Opening Brief Ignores Controlling Precedent

Spekulation's opening brief does not just omit key facts; it ignores binding precedent that is squarely on point with the only issue on appeal.  The case law on the time-of-filing rule is well-developed.  As the U.S. Supreme Court has stated:  "It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'"  *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824)).  The Supreme Court even remarked that the "time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure."  *Id.* at 571.  And the Ninth Circuit has instructed that "[o]nce jurisdiction attaches, a party cannot thereafter, by its own change of citizenship, destroy diversity."  *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002).

But Spekulation and Mr. Hong do not even mention the time-of-filing rule, let alone offer any reason why it does not apply under the facts of the instant case. Instead, they pretend the rule does not exist. This egregious omission is an affront to this Court and to the duties owed by any litigant and its counsel to the Court, the other parties, and the general public.

Moreover, Spekulation and Mr. Hong were aware of the rule and related precedent. For example, when opposing the motion to remand, Shellpoint discussed the closely analogous case of *Lewis v. Lewis*, 358 F.2d 495, 502 (9th Cir. 1966). *See* ECF No. 19 at 6-7. There, the Ninth Circuit held that "Plaintiff's change of citizenship did not oust the district court of diversity jurisdiction." *Lewis v. Lewis*, 358 F.2d 495, 502 (9th Cir. 1966). And here, in its decision on Spekulation's motion to remand, the district court agreed that *Lewis* was a case with facts "that are analogous to this one." ECF No. 29 at 10. The district court also quoted from *Grupo Dataflux* and *Strotek* in its decision. *See id.* at 9-10. And after analyzing these cases, the district court concluded that Shellpoint "has met its burden to show that at the time of filing, diversity was complete as to Spekulation, a California citizen, and [Shellpoint], a Delaware corporation." *Id.* at 10.

Hence, Spekulation and Mr. Hong cannot plausibly claim to be unaware of this precedent, yet the opening brief does not make a single reference to any of these cases. Nor does the opening brief cite to any other change-of-citizenship precedent,

let alone attempt to distinguish *Grupo Dataflux*, *Strotek*, and *Lewis*. Indeed, the opening brief does not even mention the fact that Spekulation changed its citizenship after filing this action. By failing to acknowledge this controlling precedent, Spekulation and Mr. Hong paint a distorted picture about the settled law governing this appeal.

## II. The Court Should Strike the Opening Brief, Summarily Affirm the District Court's Order, and Sanction Spekulation and Mr. Hong

Regrettably, the lack of candor exhibited in Spekulation's misleading opening brief gives every appearance of an attempt to deceive the Court. As a result, this Court should strike the opening brief, summarily affirm the district court's order, and sanction Spekulation and Mr. Hong.

### A. The Court Should Strike Spekulation's Opening Brief

The Court should strike Spekulation's opening brief due to its incomplete and misleading statement of the case and relevant facts. FRAP 28(a)(6) requires the appellant's brief to set forth a "statement of the case setting out the facts relevant to the issues submitted for review." Spekulation did not comply with this requirement. As discussed above, Spekulation's "Statement of the Case and Facts" omits *the* critical fact about its citizenship. By failing to inform this Court that Spekulation acquired its Delaware citizenship *after* the filing of the original complaint and did so by forming a new entity to act as its trustee, Spekulation failed to set forth the relevant facts as required by Rule 28.

That Spekulation's opening brief includes *some* relevant facts is not enough. As courts have held, Rule 28 requires "a *complete* statement of relevant facts." *MacArthur*, 309 F.3d at 1218 (emphasis added); *see also El-Gharabi*, 796 F.2d at 936 n.1 ("We remind petitioner's counsel that it is his responsibility to provide a *complete* statement of facts necessary for us to consider the issues raised on appeal." (emphasis added)). Spekulation's statement of facts must be seen for what it is— incomplete (and disingenuous)—because it leaves out the key fact surrounding Spekulation's after-the-fact acquired Delaware citizenship and, as such, is misleading. And a "misleading statement of facts increases the opponent's work, our work, and the risk of error." *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1224 (7th Cir. 1995); *see also Palmquist v. Selvik*, 111 F.3d 1332, 1337 (7th Cir. 1997) (granting appellee's motion to strike statement of facts under Seventh Circuit Rule 28(d)(1) because, *inter alia*, the statement of facts "did not give the entire story"). Thus, hiding a critical fact that is detrimental to one's position on appeal violates Rule 28.

Because Spekulation's brief fails to comply with Rule 28, this Court should strike it. Ninth Circuit Rule 28-1(a) expressly provides that briefs that are not "prepared and filed in accordance with the Federal Rules of Appellate Procedure … may be stricken by the Court." Appellate courts also have inherent authority to strike briefs that are impertinent or irrelevant. *See Carrigan v. California State*

*Legislature*, 263 F.2d at 564 (discussing an appellate court's inherent power to strike briefs and pleadings "as either scandalous, impertinent, scurrilous, and/or without relevancy"). The Court should invoke this power here and strike the opening brief.

### B. The Court Should Summarily Affirm the District Court's Order

Regardless of whether the Court strikes Spekulation's opening brief, this case is nonetheless suited for summary affirmance. Ninth Circuit Rule 3-6 expressly provides for the summary disposition of civil appeals in situations like this. In particular, Rule 3-6(a)(2) states that the Court may, "prior to the completion of briefing," issue a dispositive order if "it is manifest that the questions on which the decision in the appeal or petition for review depends are so insubstantial as not to justify further proceedings." Motions to summarily affirm are appropriate in "appeals obviously controlled by precedent." *United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982); *see also Deocampo v. Barr*, 766 F. App'x at 556 ("This petition for review is appropriate for summary disposition under Ninth Circuit Rule 3-6 because Petitioners argument is foreclosed by Ninth Circuit authority.").

Spekulation's only argument on appeal is "obviously controlled by precedent." *Hooton*, 693 F.2d at 858. As discussed above, both the U.S. Supreme Court and the Ninth Circuit have confirmed that, for purposes of diversity jurisdiction, citizenship is determined at the time of filing the complaint. *See Grupo Dataflux*, 541 U.S. at 570; *Strotek Corp*, 300 F.3d at 1131. Spekulation does not argue to the contrary.

Nor does Spekulation contest that the record in the district court shows that, at the time of filing, Spekulation was a "citizen of the State of California," and Shellpoint was a "Delaware limited liability company." ECF No. 1-1 at 3 (Compl. ¶¶ 1, 3). Putting aside Spekulation's gamesmanship in manufacturing Delaware citizenship for itself after the original complaint was filed, the relevant analysis under controlling precedent leads to one inevitable conclusion: Spekulation and Shellpoint were diverse at the time of filing.

"Where the outcome of a case is beyond dispute, a motion for summary disposition is of obvious benefit to all concerned." *Hooton*, 693 F.2d at 858. Here, there is no dispute that the parties were diverse under controlling precedent. Spekulation offers no other argument for disrupting the district court's ruling, and further briefing on the merits of this appeal would benefit no one. Accordingly, the Court should summarily affirm.

### C.    The Court Should Sanction Spekulation and Mr. Hong

#### 1.    The Court Should Impose Sanctions Under FRAP 46(c), 28 U.S.C. § 1927, and Its Inherent Power

Spekulation's opening brief bears the hallmarks of an attempt to mislead the Court. "One of the most important aspects of the work of an appellate lawyer is the obligation to provide the court with a fair and accurate presentation of the relevant facts." *In re Liotti*, 667 F.3d 419, 429 (4th Cir. 2011). Mr. Hong shirked this obligation by failing to disclose essential facts about Spekulation's citizenship.

Mr. Hong did this because, if he had been candid about those facts, it would have revealed that diversity jurisdiction exists under Supreme Court and Ninth Circuit precedent. Spekulation and Mr. Hong should be sanctioned for their "hide-the-ball" pursuit of this appeal.

At least three independent bases authorize this Court to sanction Spekulation and/or Mr. Hong under these circumstances. Given the egregiousness of the conduct at issue, this Court should draw on its authority and do so.

*First*, the Court has authority under FRAP 46(c) to sanction Mr. Hong. Rule 46(c) states that a "court of appeals may discipline an attorney who practices before it for conduct unbecoming of a member of the bar." The Ninth Circuit has imposed sanctions under this rule for misleading the court on matters that "went to the heart of the appeal." *DCD Programs, Ltd. v. Leighton*, 846 F.2d at 528. The sanctionable conduct in *Leighton* is similar to the present case in that it rested on appellee's counsel's inaccurate description of the record of the proceedings in the district court. *See id.* at 527-28. The court sanctioned counsel under Rule 46(c) and stated that "[t]he court relies on counsel to state clearly, candidly, and accurately the record as it in fact exists." *Id.* at 528.

Here, leaving out the most critical fact about Spekulation's citizenship cannot be characterized as a candid and accurate description of the case. And as the Ninth Circuit has instructed, "courts [should not] tolerate deliberate mistakes which

15

amount to … an egregious lack of candor toward the courts." *Deutscher v. Whitley*, 884 F.2d 1152, 1162 (9th Cir. 1989). The *Deutscher* court went on to say that "[i]n the case of deliberate mistakes, it may become necessary for this court to act to prevent and deter such conduct." *Id.* (citing FRAP 46). This Court should invoke Rule 46 and sanction Mr. Hong for his lack of candor in describing the facts of this case and for ignoring controlling precedent.[2]

*Second*, a federal statute—28 U.S.C. § 1927—makes an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" personally liable for the costs incurred because of the attorney's conduct. The Ninth Circuit has invoked section 1927 to impose sanctions for a lack of candor in pursuing an appeal. *See Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004 (9th Cir. 2015). In *Blixseth*, appellant's counsel proffered certain evidence that supported appellant's position but omitted other evidence demonstrating that the evidence on which appellant relied was forged. *See id.* at 1008. The Ninth Circuit held that "[t]his omission is an unreasonable and irresponsible breach of [appellant's counsel's] 'duty

---

[2]       Mr. Hong's lack of candor also arguably violates Nevada Rule of Professional Conduct 3.3, which is titled "Candor Toward the Tribunal." Rule 3.3 provides that a lawyer shall not knowingly "[m]ake a false statement of fact or law to a tribunal." Nev. R. Prof'l Cond. 3.3(a)(1). Nor shall a lawyer "[f]ail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Nev. R. Prof'l Cond. 3.3(a)(2). Rule 3.3 clearly emphasizes the importance of a lawyer's duty of candor to the court, which Mr. Hong has not upheld in this appeal.

of good faith and candor in dealing with the judiciary.'" *Id.* (quoting *United States v. Associated Convalescent Enters., Inc.*, 766 F.2d 1342, 1346 (9th Cir. 1985)). The Ninth Circuit ultimately concluded that "[s]uch a breach supports sanctions under section 1927." *Id.* (citing *Associated Convalescent*, 766 F.2d at 1346-47).

     Mr. Hong's conduct in this appeal is analogous. He includes the fact that Spekulation has a trustee that is incorporated in Delaware, *see* Dkt. No. 20 at 3, but he omits that this entity was incorporated and made trustee after the filing of the complaint. Mr. Hong also fails to identify that the post-filing change in Spekulation's citizenship was the central reason for the district court's denial of the motion to remand. Those omissions are tantamount to a "breach of [counsel's] duty of good faith and candor" that warrants sanctions under section 1927. *Blixseth*, 796 F.3d at 1008 (internal quotation omitted).

     Mr. Hong's disregard of controlling precedent also supports sanctions under section 1927. As discussed above, the opening brief does not even mention the U.S. Supreme Court and Ninth Circuit authority that formed the basis of the district court's denial of the remand motion. The Ninth Circuit has sanctioned an appellant's counsel for similar disregard of controlling precedent. *See Hamblen v. County of Los Angeles*, 83 F.2d 462 (9th Cir. 1986). In *Hamblen*, the appellant's argument was foreclosed by "clear authority" that appellant's counsel "fail[ed] to address or even mention." *Id.* at 465. The Ninth Circuit characterized the brief as "a textbook

example of feckless lawyering" and sanctioned appellant's counsel under section 1927 by awarding "attorney's fees and double costs on this appeal, to be paid by [appellant's counsel]." *Id.* (citing 28 U.S.C. § 1927). A similar result should follow in this case.[3]

*Third*, this Court may sanction both Spekulation and Mr. Hong under its inherent power to impose sanctions on parties or attorneys. *Chambers v. NASCO, Inc.*, 501 U.S. at 47 (recognizing federal courts' "inherent power to impose sanctions for … bad-faith conduct"). This power exists alongside other mechanisms to impose sanctions and "can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 48. Hence, in addition to the provisions discussed above, this Court can and should rely on its inherent authority to impose sanctions as a means to deter future misconduct on the part of Spekulation and Mr. Hong.

---

[3]     The vexatiousness of Mr. Hong's conduct under section 1927 is made even more egregious by the number of extensions he requested before filing the inadequate and misleading opening brief. When Spekulation finally filed the opening brief on May 30, 2024—*after four month-long extensions*—it merely recycled the same diversity jurisdiction argument asserted over a year ago in the motion to remand. *Compare* ECF No. 10 (arguing that Spekulation is a Delaware citizen because its trustee is a Delaware corporation) *with* Dkt. No. 20 at 15 (same). Taking four months' worth of extensions only to advance a recycled and rejected argument on appeal is the type of unreasonable and vexatious multiplication of proceedings that section 1927 is designed to prevent.

### 2.  The Court Should Impose Monetary and Non-Monetary Sanctions

As for the nature of the appropriate sanctions, this Court has discretion to determine what sanctions to impose, including attorneys' fees and costs under 28 U.S.C. § 1927, as well as nonmonetary directives and monetary penalties under FRAP 46(c) and its inherent power.  Given the egregiousness of the conduct here, the Court should make use of the full panoply of available sanctions when determining what to impose.

Fortunately, a comparator for quantification already exists, as this Court previously sanctioned Mr. Hong for taking positions that were "totally meritless." *See Bayview Loan Servicing, LLC v. 6364 Glenolden St. Tr.*, No. 19-17544, 2021 WL 4938115, at *3 (9th Cir. Oct. 22, 2021).  In *Bayview*, the Ninth Circuit held that an appeal pursued by Mr. Hong and his client (the appellant) was "frivolous" because the arguments he raised had "repeatedly been rejected." *Id.*  After finding that this "repeated misconduct merits the imposition of sanctions," the Ninth Circuit referred the issue of the proper amount of sanctions to the Appellate Commissioner. *Id.*  The Appellate Commissioner then imposed a $5,000 sanction against Mr. Hong and a $5,000 sanction against his client. *See* No. 19-17544 (9th Cir. Nov. 24, 2021), Dkt. No. 59.  But Mr. Hong clearly has not learned his lesson.

Accordingly, Shellpoint proposes the following:  (1) a formal admonition; (2) an award of attorneys' fees and costs to be computed in further briefing before the

Court; and (3) a fixed monetary penalty to be paid into the Court, which in Shellpoint's view should be no less than $10,000 assessed separately against each of Spekulation and Mr. Hong (i.e., twice as much as the sanctions imposed in the *Bayview* case).

## <u>CONCLUSION</u>

For the reasons discussed above, Shellpoint respectfully requests that the Court strike Spekulation's opening brief, summarily affirm the district court's order, and sanction Spekulation and Mr. Hong for their conduct.

DATED this 26th day of June, 2024.

**AKERMAN LLP**

*/s/ Nicholas E. Belay*
_____
Ariel E. Stern, Esq.
Nevada Bar No. 8276
Natalie L. Winslow, Esq.
Nevada Bar No. 12125
Nicholas E. Belay, Esq.
Nevada Bar No. 15175
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134

*Attorneys for Defendant-Appellee NewRez*
*LLC d/b/a Shellpoint Mortgage Servicing*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this appellate brief complies with the type-volume limitations as set forth in Rule 27 of the Federal Rules of Appellate Procedure.  The brief has been prepared using Times New Roman, 14-point font, and contains a total of 4,956 words proportionally spaced.

DATED this 26th day of June, 2024

**AKERMAN LLP**

*/s/ Nicholas E. Belay*
Natalie L. Winslow, Esq.
Nevada Bar No. 12125
Nicholas E. Belay, Esq.
Nevada Bar No. 15175
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134

*Attorneys for Defendant-Appellee NewRez*
*LLC d/b/a Shellpoint Mortgage Servicing*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed on June 26, 2024, the foregoing **Appellee's Motion to Strike Appellant's Opening Brief, to Summarily Affirm the District Court's Order, and to Sanction Appellant and Its Counsel** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I further certify that all parties of record to this appeal either are registered with the CM/ECF or have consented to electronic service and that service will be accomplished by the following method:

[ ]   By placing a true copy enclosed in sealed envelope(s) addressed as follows:

[X]   (By Electronic Service) Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF systems sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's CM/ECF system.

[X]   (Nevada) I declare that I am employed in the office of a member of the bar of this Court at whose discretion the service was made.

/s/ Patricia Larsen
An employee of AKERMAN LLP